## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 3:23cr288** |
| | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **CHRISTOPHER ESSAMEDDIN** | : | |
| **BIRRY,** | : | |
| **Defendant** | : | |

### MEMORANDUM

Before the court is defendant's motion to dismiss pursuant to Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure.  Having been fully briefed, this matter is ripe for disposition.

**Background**

On November 14, 2023, a grand jury in the Middle District of Pennsylvania indicted Defendant Christopher Essameddin Birry with drug trafficking and gun possession offenses.  (Doc. 1).  The indictment charges defendant with:

- Counts 1-5 – distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C);

- Count 6 - possession of firearms in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c)(1)(A)(i); and

- Count 7 - possession of firearms after being convicted of a crime punishable by imprisonment for a term exceeding one year, U.S.C. § 922(g)(1).

(Id.)

These offenses allegedly occurred on or about May 31, 2023 in Luzerne County, Pennsylvania. (Id.)

Defendant pled not guilty to all counts on November 16, 2023. (Doc. 9).  On April 5, 2024, defendant filed a motion to dismiss two counts of the indictment (Doc. 24) arguing that the charges in Counts 6 and 7 are unconstitutional based on New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022), and Range v. Att'y Gen. United States of Am., 69 F.4th 96, 98 (3d Cir. 2023), cert. granted, judgment vacated sub nom. Garland v. Range, No. 23-374, 2024 WL 3259661 (U.S. July 2, 2024).

The government filed a brief in opposition on June 5, 2024, (Doc. 34), and defendant filed a reply brief on June 20, 2024. (Doc. 35).  After the United States Supreme Court decided United States v. Rahimi, 602 U.S. ----,144 S.Ct. 1889 (June 21, 2024), the court ordered the parties to file supplemental briefing. (Doc. 37).  The parties filed the final round of briefing on July 12, 2024, (Docs. 38-39), bringing this matter to its present posture. [1]

---

[1] While this motion was pending, the United States Supreme Court also granted certiorari in Range, vacated the judgment, and remanded the case back to the Third Circuit Court of Appeals for further consideration in light of the Rahimi decision.  2024 WL 3259661, at *1 (U.S. July 2, 2024).

An order to grant certiorari, vacate the judgment below, and remand ("GVR order") flags "a particular issue that [the circuit court] does not appear to have fully considered[.]" Lawrence on Behalf of Lawrence v. Chater, 516 U.S. 163, 167, (1996).  A GVR order, however, "does not constitute a final determination on the merits; it does not even carry precedential weight." Gonzalez v. Justices of Mun. Ct. of Boston, 420 F.3d 5, 7 (1st Cir. 2005); see also In re

**Legal Standard**

Defendant files this motion pursuant to Rule 12(b)(3)(B)(v).  Rule

12(b)(3)(B)(v) specifically "authorizes a defendant to lodge a pretrial challenge to

the sufficiency of an indictment for 'failure to state an offense.' " United States v.

Willis, 844 F.3d 155, 162 (3d Cir. 2016).

In considering a defense motion to dismiss an indictment, a district court

must accept as true the factual allegations set forth in the indictment. United

States v. Bergrin, 650 F.3d 257, 265 (3d Cir. 2011)(citations omitted).  The court

is limited regarding the matters it may consider during this analysis. See id. at

268.  Specifically, a pretrial motion to dismiss pursuant to Rule 12(b)(3) "allows a

district court to review the sufficiency of the government's **pleadings**," but it is

"not a permissible vehicle for addressing the sufficiency of the government's

**evidence**." United States v. Huet, 665 F.3d 588, 594-95 (3d Cir. 2012),

abrogated on other grounds by United States v. De Castro, 49 F.4th 836, 845 (3d

Cir. 2022) (emphasis added) (citation omitted).

---

Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig., 722 F.3d 838, 845 (6th Cir. 2013);
see also Tyler v. Cain, 533 U.S. 656, 666 n. 6 (2001) (explaining that a previous GVR order
"was not a final determination on the merits") (internal quotation marks omitted).  The GVR
order also does not imply that the Supreme Court had a different result in mind in Range or
that the prior decision of the Third Circuit was erroneous. See In re Whirlpool Corp., 772 F.3d
at 845. Because Range is at an unsettled posture, however, the court gives its analysis little
consideration in this memorandum.

Defendant challenges the constitutionality of Counts 6 and 7 in the indictment.  Regarding Count 7, Section 922(g)(1), the felon-in-possession offense, the indictment includes no details about defendant's prior felony convictions. (See Doc. 1).  The government, however, attaches a criminal record from state court proceedings in opposition to the motion to dismiss. (Doc. 34-1). In his reply brief, defendant does not specifically challenge his prior convictions. (See Doc. 36).  Thus, for the reasons set forth previously when faced with a similar motion to dismiss, the court will consider defendant's criminal records and only those records in disposing of defendant's motion to dismiss.  United States v. Adams, No. 3:23CR122, 2024 WL 54112, at *1-*2 (M.D. Pa. Jan. 4, 2024). The factual narrative offered by the government regarding defendant's prior convictions will not be considered nor will the court consider the government's recitation of the events leading to defendant's arrest in this case.

**Discussion**

**A. Defendant's Prior Convictions**

As noted above, Count 7 of the indictment charges defendant with a violation of Section 922(g)(1).  Section 922(g)(1) provides:

> It shall be unlawful for any person -- . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to

4

> receive any firearm or ammunition which has been shipped
> or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

In this case, defendant's criminal record reflects convictions in the

Commonwealth of Pennsylvania with the following dispositions:

- Defendant was sentenced on January 19, 2023 to a minimum sentence of three (3) months and a maximum sentence of two hundred and eighty-eight (288) days for possession with intent to deliver ("PWID") methamphetamine (1.14g).

- Defendant was also sentenced on January 19, 2023 to fifteen (15) months of probation for PWID methamphetamine (<2.5g).

(Doc. 34-1).

The criminal record supplied does not indicate which statute defendant

violated.  In Pennsylvania, the court notes, PWID is a criminal offense found in

the Commonwealth's Controlled Substance, Drug, Device and Cosmetic Act, 35

P.S. § 780-101, *et seq.*  The crime of PWID methamphetamine is set forth at 35

PA. STAT. § 780-113(a)(30).  Under Pennsylvania law, a person who violates 35

PA. STAT. § 780-113(a)(30) with respect to a PWID methamphetamine offense "is

guilty of a felony and upon conviction thereof shall be sentenced to imprisonment

not exceeding ten years[.]" 35 PA. STAT. § 780-113(f)(1.1).[2]

---

[2] Based on the maximum term of imprisonment, defendant was convicted of a second-degree felony in Pennsylvania. See 18 PA. CONS. STAT.  § 1103(2). In Pennsylvania, mandatory

Despite two recent convictions of a crime punishable by imprisonment for a term exceeding one year, defendant argues that Section 922(g)(1) is unconstitutional on its face and as applied to him.  Defendant likewise argues that Section 924(c)(1)(A)(i), regarding possession of firearms in furtherance of a drug trafficking offense, is unconstitutional on its face and as applied to him.

### B. Second Amendment Case Law

The Second Amendment provides that: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. AMEND II.

In District of Columbia v. Heller, 554 U.S. 570 (2008), the United States Supreme Court determined that the Second Amendment protects an individual's right to "keep arms," or "have weapons," and "bear arms," which means to "wear, bear, or carry upon the person or in the clothing or in a pocket, for the purpose of being armed and ready for defensive action in case of a conflict with another person." Id. at 583-84 (citations omitted)(ellipses removed).  The Second Amendment right is not connected to "participation in a structured military organization[,]" or "limited to carrying of arms in a militia." Id. at 584-85.

---

minimum sentences apply when the amount of methamphetamine is five grams or more. 18 PA. CONS. STAT.  § 7508(a)(4).

6

However, "[t]he right secured by the Second Amendment is not unlimited." Id. at 626.  Heller did not "read the Second Amendment to protect the right to bear arms for *any* sort of confrontation..."  Id. at 595 (emphasis in original); see also Rahimi, 144 S.Ct. at 1897 ("the right was never thought to sweep indiscriminately.")

The Supreme Court also made clear that its decision in Heller did not cast doubt on "longstanding prohibitions on the possession of firearms by felons ...." 554 U.S. at 626.  Per the majority opinion, prohibitions on possession of firearms by felons are "presumptively lawful measures."  Id. at 626-27, n. 26.

McDonald v. City of Chicago, Illinois, 561 U.S. 742 (2010), reiterated this declaration when it incorporated the individual right to keep and bear arms against the states through the Fourteenth Amendment.  Id. at 786, 791. Specifically, the Supreme Court stated:

> It is important to keep in mind that Heller, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S., at 626, 128 S.Ct., at 2816. We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons . . . ." Id., at 626-627, 128 S.Ct., at 2816-2817.

Id. at 786.

7

To summarize, Heller and McDonald recognized that the "Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." Bruen, 597 U.S. at 9. Bruen recognized that the Second Amendment right extends to "an individual's right to carry a handgun for self-defense outside the home." Id.

In rejecting "two-step" frameworks that had developed in the circuit courts for analyzing Second Amendment challenges, Bruen also explained the test applicable here, as one "rooted in the Second Amendment's text, as informed by history." Id. at 19.

An initial consideration under Bruen is whether the Second Amendment's plain text presumptively guarantees and protects an individual's conduct. 597 U.S. at 17 (discussing Heller). A court must consider whether the individual is "part of 'the people' whom the Second Amendment protects." Id. at 31-32 (citing Heller, 554 U.S. at 580). A court must also consider whether the Second Amendment protects an individual's course of conduct. Id. at 32. Then, as summarized:

> [If] the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.
>
> To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the

> regulation is consistent with this Nation's historical tradition of firearm regulation.
>
> Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

Id. at 17 (citation omitted, formatting modified, quotation marks removed).

In summary, "when a firearm regulation is challenged under the Second Amendment, the Government must show that the restriction 'is consistent with the Nation's historical tradition of firearm regulation.' " Rahimi, 144 S. Ct. at 1896 (quoting Bruen, 597 U.S. at 24). The Government "bears the burden to 'justify its regulation.' " Id.

District courts are directed to examine the historical tradition of firearm regulation to "help delineate the contours of the [Second Amendment] right." Id. (citing Bruen, 597 U.S. at 17). When confronted with present-day firearm regulations, the "historical inquiry that courts must conduct will often involve reasoning by analogy…" Bruen, 597 U.S. at 28. Although not "an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment…" Heller, McDonald, and Bruen, "point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." Id. at 29 (citations omitted). "Therefore, whether modern and historical regulations impose a comparable burden on the right of armed self-defense and

9

whether that burden is comparably justified are *central* considerations when engaging in an analogical inquiry." Id. (citations omitted, quotation marks removed) (emphasis in original).

"[A]nalogical reasoning under the Second Amendment[,]" however, "is neither a regulatory straightjacket nor a regulatory blank check." Id. at 30. Such reasoning only requires "that the government identify a well-established and representative historical *analogue*, not a historical *twin*." Id. (emphasis in original). Furthermore, "even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." Id. In Rahimi, the Supreme Court noted that "some courts have misunderstood [this] methodology," and its precedents "were not meant to suggest a law trapped in amber." 144 S.Ct. at 1897.

Arguing that the government cannot meet its burden of showing historical analogues to these modern firearms regulations, defendant's motion to dismiss raises facial and as-applied challenges to Section 922(g)(1) and Section 924(c)(1)(A).[3] His as-applied challenges will be resolved first.

---

[3] The United States Supreme Court has not addressed the constitutionality of these statutes. The Range decision, a momentarily successful as-applied challenge to Section 922(g)(1), is not entitled to weighty consideration at least at this time. See Garland, 2024 WL 3259661 (U.S. July 2, 2024). Nonetheless, defendant remains incarcerated, and the court is obligated to decide the motion to dismiss as promptly as possible while potentially dispositive cases work their way through the appeals process.

**C. Whether Section 922(g)(1) and Section 924(c)(1)(A) are Unconstitutional as Applied to Defendant**

An as-applied challenge to a statute, "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." United States v. Marcavage, 609 F.3d 264, 273 (3d Cir. 2010).

Defendant is charged with violating Section 922(g)(1). In Section 922(g)(1), Congress prohibited a person from possessing a firearm in or affecting commerce if he has been convicted of "a crime punishable by imprisonment for a term exceeding one year." Id. A knowing violation is punishable by up to fifteen (15) years of imprisonment. See 18 U.S.C. 924(a)(8). Put another way, Section 922(g)(1) is the "longstanding prohibition[] on the possession of firearms by felons" identified in Heller. 554 U.S. at 626.

Additionally, defendant is charged with violating Section 924(c)(1)(A)(i). "As one of several measures to punish gun possession by persons engaged in crime, Congress made [Section 924(c)(1)(A)] a discrete offense." Abbott v. United States, 562 U.S. 8, 12 (2010). Section 924(c) "authorizes heightened criminal penalties for using or carrying a firearm " 'during and in relation to,' or possessing a firearm 'in furtherance of,' any federal 'crime of violence or drug trafficking crime.' " United States v. Davis, 588 U.S. 445, 449 (2019)(quoting 18 U.S.C. § 924(c)(1)(A)). "The minimum prison term for the offense described in §

11

924(c) is five years, § 924(c)(1)(A)(i), in addition to 'any other term of imprisonment imposed on the [offender],' " Abbott, 562 U.S. at 12 (quoting § 924(c)(1)(D)(ii)).  The basic purpose of § 924(c)(1)(A) is "to combat the 'dangerous combination' of 'drugs and guns.' " Muscarello v. United States, 524 U.S. 125, 132 (1998) (quoting Smith v. United States, 508 U.S. 223, 240 (1993)).

In as-applied challenges to firearms regulations, the court must first decide whether the text of the Second Amendment applies to a person and his proposed conduct. See Bruen, 597 U.S. at 31-32.  Here, the parties do not dispute that the Second Amendment applies to defendant as a member of "the people."  They do dispute, however, how defendant's proposed conduct should be measured. Defendant argues without elaboration that his conduct is presumptively protected by the Second Amendment. (Doc. 25, Br. in Supp. at 8). The government charges here, however, that defendant possessed firearms to traffic drugs, which, it argues, is conduct not protected by the Second Amendment. (Doc. 1, Indictment; Doc. 34, Br. in Opp. at 8-12).

In addition to an alleged violation of the felon-in-possession statute, Section 922(g)(1), defendant is also charged with violating Section 924(c), which implicates facts that defendant possessed firearms while drug trafficking.  Those facts cannot be divorced from the analysis of Section 922(g)(1) or from his alleged violations of 21 U.S.C. § 841(a)(1) as defendant suggests. See Davis,

139 S. Ct. at 2338 (Kavanaugh, J., dissenting op.)("Ordinarily, when charged under § 924(c), a defendant will be charged with both an underlying federal crime and then also a § 924(c) offense.")

Second Amendment jurisprudence supports the government's position about whether defendant's conduct is protected. The Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation[,]" but the Supreme Court does not read "the Second Amendment to protect the right of citizens to carry arms for *any* sort of confrontation[.]" Heller, 554 U.S. at 595 (emphasis in original). In later summarizing Heller, the Supreme Court remarked:

> Self-defense is a basic right, recognized by many legal systems from ancient times to the present day, and in Heller, we held that individual self-defense is "the *central component* " of the Second Amendment right. Explaining that "the need for defense of self, family, and property is most acute" in the home, we found that this right applies to handguns because they are "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family," **Thus, we concluded, citizens must be permitted "to use [handguns] for the core lawful purpose of self-defense."**

McDonald, 561 U.S. at 767–68 (original emphasis in italics, added emphasis in bold)(citations omitted); see also 561 U.S. at 780 ("the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home.")

Applying Heller, the Third Circuit has stated that, "[n]eedless to say, while the Second Amendment secures 'the right of law-abiding, responsible citizens to

use arms in defense of hearth and home,' it does not entitle a drug trafficker to carry a firearm in furtherance of his criminal exploits." United States v. Napolitan, 762 F.3d 297, 311 (3d Cir. 2014) (quoting Heller, 554 U.S. at 635); See also United States v. Potter, 630 F.3d 1260, 1261 (9th Cir. 2011)("it cannot seriously be contended that the Second Amendment guarantees a right to use a firearm in furtherance of drug trafficking").  Furthermore, conduct that triggers an application of Section 924(c) "falls well outside the protection of the Second Amendment" because "[t]here is no lawful purpose in possessing a firearm to further drug trafficking." United States v. Dorsey, No. 4:22-CR-00092, 2023 WL 7019185, at *2 (M.D. Pa. Oct. 25, 2023).

Defendant also remained on county probation at the time of his indictment in this case, November 14, 2023. (See Doc. 1, Doc. 34-1).  In Pennsylvania, probationers and parolees are prohibited from possessing firearms or other weapons. See 37 PA. CODE § 63.4.  Thus, other district courts have determined that individuals like the defendant are not engaged in protected Second Amendment conduct when they possess guns while on probation or parole.  See United States v. Hedgepeth, No. CR 22-377-KSM, --- F. Supp.3d ----, 2023 WL 7167138, at *4 (E.D. Pa. Oct. 31, 2023)(collecting cases); United States v. Oppel, No. 4:21-CR-00276, 2023 WL 8458241, at *2 & n. 16 (M.D. Pa. Dec. 6, 2023).

Accordingly, the Second Amendment does not apply to the proposed use of firearms for criminal exploits, such as possessing firearms in furtherance of trafficking drugs, nor does it apply to individuals whose Second Amendment rights are suspended by the terms of their probation or parole. Defendant's as-applied challenges to Section 922(g)(1) and Section 924(c)(1)(A) thus both fail under the facts alleged in the indictment.

Assuming for the sake of argument that the Second Amendment did apply to defendant's proposed conduct, however, the government has met its burden in proving that Section 922(g)(1) and Section 924(c)(1)(A) have traditional historical analogues.

In opposition to the motion to dismiss the Section 924(c) charge, the government finds support in Bruen's lengthy historical analysis about laws prohibiting the possession of firearms for particular unlawful purposes, such as terrorizing the general public. (Doc. 34 at 12-13). Specifically, Bruen analyzed the Statute of Northampton, 2 Edw. 3 (1328), as it evolved through English history into American colonial and state crimes restricting the carrying of guns. 597 U.S. at 40-47, 49-52. For example, statutes in colonial Massachusetts and New Hampshire codified the common-law offense of "bearing arms to terrorize the people." Id. at 46-47. Additionally, laws in Virginia, Massachusetts, and

Tennessee from the late 1700s and early 1800s prohibited bearing arms in a way that spread fear or terror among the people.  Id. at 50-52.

The Bruen Court also discussed criminal cases from the Antebellum South era. Id. at 51-52.  In particular, a North Carolina decision held that the Statute of Northampton was part of state law and that carrying a gun "for a 'wicked purpose' with a 'mischievous result … constituted a crime.' " Id. at 51-52 (discussing State v. Huntly, 25 N.C. 418 (1843)).  Another decision from Alabama from the same decade recognized that the common law "punished the carrying of such weapons 'for the purpose of an affray[4], and in such manner as to strike terror to the people.' " Id. at 52 (quoting O'Neil v. State, 16 Ala. 65, 67 (1849)).

These "going armed" analogues did not persuade the Supreme Court that there was an historical tradition of broadly prohibiting the public carrying of commonly used firearms for self-defense.  See Bruen 597 U.S. at 39.  These analogues, however, helped persuade the Supreme Court that another firearm restriction, 18 U.S.C. § 922(g)(8), passed constitutional muster. Rahimi, 144 S.Ct. at 1900–03.

The government analogizes these same statutes and decisions to further its argument that historical traditions "proscribing gun use for risky and

---

[4] "A noisy fight in a public place[,]" specifically, "the fighting, by mutual consent, of two or more persons in some public place, to the terror of onlookers." Black's Law Dictionary (11th ed. 2019).

dangerous purposes" apply to a "regulation designed to address the modern problem of armed drug dealers." (Doc. 34 at 13). As long known, "distributors of dangerous drugs and users of firearms in the commission of crimes of violence" are "persons found to be dangerous in a very real sense[.]" United States v. Perry, 788 F.2d 100, 113 (3d Cir. 1986). Moreover, "drug dealing [is] not necessarily violent," but it is "dangerous because [it] often leads to violence." Folajtar v. Att'y Gen. of the United States, 980 F.3d 897, 922 (3d Cir. 2020) (Bibas, J., dissenting op.)(citations omitted).

Bruen does not require an historical twin or a dead ringer. See 597 U.S. at 30. The court is thus persuaded by the government's argument by analogy that modern laws prohibiting drug traffickers from possessing firearms align with the historical tradition of firearms regulation in this country.[5] The historical regulations referenced in opposition to defendant's motion are sufficient here to withstand defendant's as-applied challenge to Section 924(c)(1)(A).

---

[5] In addition to the statutes and cases cited by the government, an extensive footnote from Judge Shwartz in a recent non-precedential Third Circuit opinion, United States v. Cash, No. 22-2713, 2023 WL 6532644, at *3 (3d Cir. Oct. 6, 2023), details "relevantly similar historical regulations that demonstrate that § 924(c) . . . is consistent with the Nation's tradition of firearm regulation." Id. at *4, n. 9. Per that footnote, laws enhancing penalties for committing robbery and burglary while armed from the late 1700s and early 1800s from Connecticut, Massachusetts, Missouri, New York, and the Northwest Territories "impose comparable burdens on the right to armed self-defense," like Section 924(c), and are "comparably justified." Id. (citations omitted). For this additional reason, defendant's as-applied challenge to Section 924(c)(1)(A) cannot succeed.

In opposition to defendant's motion to dismiss the Section 922(g)(1) charge, the government has also identified numerous colonial-era and founding-era statutes establishing that the Second Amendment permits the disarmament of those who were "deemed dangerous or untrustworthy." (Doc. 34 at 18-19 (citing Act of May 1, 1776, ch. 21, § 1, 1776 Mass. Acts 479; Act of June 13, 1777, ch. 21, § 4, 1777 Pa. Laws 63; Act for Constituting a Council of Safety, ch. 40, § 20, 1777 N.J. Laws 90; 1692 Mass. Laws 11-12; Act for the Punishing Criminal Offenders, 1696-1701 N.H. Laws 15; Act for the Punishing of Criminal Offenders, 1696-1701 N.H. Laws 15)).

In further support of its burden, the government also cites to Judge Krause's "extensive, scholarly account of the pertinent history of bans on firearm possession by felons and other dangerous persons[,]" in her dissenting opinion in Range. (Doc. 34 at 20, n. 6 (citing 69 F.4th at 120–28)).  As summarized in her dissent:

> At the Founding, a conviction for a serious crime resulted in the permanent loss of the offender's ability to keep and bear arms. Those who committed grave felonies—both violent and non-violent—were executed. *A fortiori*, the ubiquity of the death penalty suggests that the Founding generation would have had no objection to imposing on felons the comparatively lenient penalty of disarmament. Indeed, under English law, executed felons traditionally forfeited all their firearms, as well as the rest of their estate, to the government. That practice persisted in the American colonies and the Early Republic.

69 F.4th at 126–27 (footnote citations omitted).

Additionally, "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." Rahimi, 144 S. Ct. at 1902.  Just three years before Range, a Third Circuit panel found historical support to uphold the felon-in-possession ban of Section 922(g)(1) as applied to an individual convicted of tax fraud. Folajtar, 980 F.3d at 904-05.  To the extent that Folajtar is no longer good law following Bruen, the dissent in that case canvassed opinions with historical analyses setting forth that "the limit on the Second Amendment right was pegged to dangerousness . . ." Id. at 914-18 (Bibas, J. dissenting op.)(discussing Binderup, 836 F.3d at 367-74 (Hardiman, J., concurring op.) and Kanter v. Barr, 919 F.3d 437, 451 (7th Cir. 2019)(Barrett, J., dissenting op.)).[6]

Regarding defendant's "credible threat to public safety" based on his prior convictions, the Luzerne County Court of Common Pleas sentenced defendant to time served and fifteen (15) months of county probation for two separate PWID methamphetamine charges. (Doc. 34-1).  "Possession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and

---

[6] In Kanter, then-Judge Barrett's dissent explored founding-era laws that disarmed those who "demonstrated a proclivity for violence or whose possession of guns would otherwise threaten the public safety."  919 F.3d at 454.  Building upon that scholarship, she concluded, "founding-era legislatures categorically disarmed groups whom they judged to be a threat to the public safety." Id. at 458.

19

welfare of our population.' " Harmelin v. Michigan, 501 U.S. 957, 1002 (1991)

(Kennedy, J., concurring in part and concurring in the judgment) (quoting

Treasury Emp. v. Von Raab, 489 U.S. 656, 668 (1989)).  Drug crimes thus

threaten to cause great harm to society.  See id.  Defendant's past convictions

suggest that he poses or has posed a credible threat to public safety.  Although

methamphetamine distribution did not concern legislatures at the time of the

founding or after the Civil War, individuals like defendant were disarmed under

historical analogues sufficient to withstand his as-applied challenge to Section

922(g)(1).

**D. Whether Section 922(g)(1) and Section 924(c)(1)(A) are Facially Invalid**

Turning next to defendant's facial challenges to Section 922(g)(1) and

Section 924(c)(1)(A), he must establish that "no set of circumstances" exist under

which the law would be valid.  United States v. Salerno, 481 U.S. 739, 745

(1987).  "This is the 'most difficult challenge to mount successfully.' " United

States v. Mitchell, 652 F.3d 387, 405 (3d Cir. 2011)(quoting Salerno, 481 U.S. at

745).  To prevail, the government need only demonstrate that Section 922(g)(1)

and Section 924(c)(1)(A) are constitutional in some of their applications.  Rahimi,

144 S. Ct. at 1898.  The government has demonstrated that both Section

922(g)(1) and Section 924(c)(1)(A) are constitutional as applied to the facts of the

defendant's own case.  Thus, defendant's facial challenges to these statutes fall short and his motion to dismiss will be denied.

**Conclusion**

For the reasons set forth above, defendant's motion to dismiss Counts 6 and 7 of the indictment (Doc. 24) will be denied.  An appropriate order follows.

Date: 7/25/24

**JUDGE JULIA K. MUNLEY**
**United States District Court**